[Crim. No. 36922. Second Dist., Div. Five. June 22, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
NATHANIAL TEDDIE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Nicholas G. Spirtos, Deputy State Public Defender, and Marilee Marshall for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Lisa B. Lench, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUS, P. J.—Defendant was charged by information with kidnaping for the purpose of robbery (Pen. Code § 209), robbery (Pen. Code § 211), burglary (Pen. Code § 459), and grand theft auto (Pen. Code, § 487, subd. 3). Additionally, he was charged with having personally used a firearm in conjunction with each offense (Pen. Code §§ 12022.5, 1203.06). A jury convicted him on all counts, and found each firearm allegation to be true. Defendant was sentenced to life imprisonment with the possibility of parole; he appeals.

FACTS

On August 14, 1979, Michael Cleary, night manager at Eddie's Liquor in Long Beach, went to work at 4 p.m. He closed the store at midnight and arrived at Sam's Bar, also in Long Beach, at about 12:50 a.m. on August 15. He left the bar at about 1:55 a.m. after drinking three or four bottles of beer.

After leaving the bar, Cleary walked to his car, which was parked about a block away. He got into the car and took out his keys. As he was about to place the key in the ignition, a black man with a black automatic gun told him to move over and open the passenger door; Cleary complied. The man entered the car on the driver's side and another black man entered on the passenger side.[1]

The man on the driver's side passed the gun to the other man, who held it at Cleary's right side. Cleary gave the men his wallet; they went through it, removed the money, and returned the wallet. They also relieved Cleary of a small metal bracelet which he had been wearing around his wrist. The car was then started and they drove a couple of blocks into a residential area. There they stopped, forced Cleary to get into the trunk of the car, again took his wallet, and drove off.

The men opened the trunk several times to converse with Cleary. At some point, he told them that he worked at Eddie's Liquor Store and they asked him if he would tell them how to turn off the store's alarm system. The men pulled up in front of Eddie's Liquor Store as it was getting light. They again asked Cleary to tell them how to turn off the alarm system and he complied. The men told Cleary that if anything went wrong, he would be hurt.

About an hour later Cleary was let out of the trunk at the corner of Clark Avenue and Artesia, near the 91 Freeway. It was light outside. The men told Cleary to look straight ahead and drove off in his car.

On the following day, John Luhn, the general manager of Eddie's Liquor Store, discovered that a burglary had taken place. There were no signs of forced entry. Luhn took an inventory and discovered that two half shelves of cigarettes, change from the cash register, some liquor, some sunglasses, and miscellaneous other items were missing from the store.

On August 21, 1979, Quilone Jerome Mitchell was stopped for a traffic violation; he was driving Cleary's car and wearing Cleary's metal bracelet. Mitchell was arrested for grand theft auto and the car was

---

[1]At the preliminary hearing Cleary was unable to identify either of the men as defendant. At the trial he was found to be unavailable as a witness and his preliminary hearing testimony was read into the record.

impounded.[2] When the car was searched, police found a number of items in a closed clothing bag. These items included jewelry and sunglasses which were later identified as similar to those taken from Eddie's Liquor Store. Defendant's fingerprints were found in the car.

Officer Richard Williams and Detective Kartinen of the Long Beach Police Department were assigned to investigate the case. On August 22, 1979, they met with Mitchell and through him learned of defendant, whom they then arrested.

Other evidence which connected defendant with the crimes charged need not be detailed. No defense witnesses were presented.

## DISCUSSION

Defendant argues on appeal: (1) that there is insufficient evidence to support the kidnaping for robbery conviction; and (2) that he is entitled to a new trial because the trial court refused to hear his motion for new trial (Pen. Code § 1181) before pronouncing judgment.

### I.

■ Defendant claims that his kidnaping for robbery conviction was not supported by substantial evidence, and that, at most, he was guilty of simple kidnaping (Pen. Code § 207.) We disagree.

The gist of defendant's argument is that there were two separate asportations of Cleary, and that with respect to each, the robbery had already been completed. The first asportation, defendant argues, did not begin until after Cleary had been relieved of his money and his bracelet, and ended when the robbers stopped to put him into the trunk. The second began after the wallet was again taken and ended when the robbers let Cleary out of the trunk.

We are not persuaded that the asportation was so clearly segmented. The court could justifiably have concluded that there was a single asportation, beginning when the robbers first started Cleary's car, and not ending until Cleary was set free. In the course of this single asportation, Cleary's wallet was taken from him. The wallet was presumably of some value to Cleary and the taking of it constituted a robbery.

---

[2]Mitchell was tried separately and is not involved in this appeal.

## II.

■ Defendant's second point—that the trial court refused to hear his motion for a new trial and that he is therefore automatically entitled to a new trial—is more troublesome.[3]

After the jury returned its verdict on December 4, 1979, defendant waived time and the court adjourned until January 8, 1980. On that date defendant filed a written motion for a new trial, relevant portions of which are copied below.[4] At the outset of the January 8 proceedings, defense counsel stated that he did not intend to offer anything "other than what is in the written motion, and would be submitting it on that motion, with five bases for the motion for new trial outlines [*sic*] therein." The court immediately purported to dismiss the motion on the ground that it was not filed within the time required by law. Counsel disagreed.[5] The court then again denied the motion stating: "I have read this motion. There isn't anything new in it. I have made rulings on

---

[3]Section 1202 of the Penal Code provides: "If no sufficient cause is alleged or appears to the court at the time fixed for pronouncing judgment, as provided in section 1191 of this code, why judgment should not be pronounced, it must thereupon be rendered; and if not rendered or pronounced within the time so fixed or to which it is continued under the provisions of Section 1191 of this code, then the defendant *shall be entitled to a new trial*. If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment or the making of an order granting probation, then the defendant *shall be entitled to a new trial*." (Italics added.)

[4]"The grounds in support of said motion are as follows: Section 1181.5 Penal Code —That the Court erred in questions of law during the course of the trial in the following instances:

"1. In permitting the selection of the jury from a panel containing no Blacks after proper objection, knowing Mr. Teddie to be a Black male.

"2. In permitting the testimony of the victim of the robbery/kidnap to be read from the Preliminary Hearing Transcript after finding due diligence was effected in attempting to locate him.

"3. In admitting into evidence sunglasses and a medallion found in the home of defendant's mother when defendant was absent from the premises.

"4. In admitting statement attributed to Mr. Teddie given to Mr. Pella (Polygraph operator) and Officer Kartinen immediately after the defendant stated he did not wish to take a polygraph examination.

"5. In failing to strike the Sect. 209 P.C. allegation on its own motion as being based on insufficient evidence.

"Section 1181.6 Penal Code—That the verdict is contrary to law and fact in that the jury returned a verdict of Guilty on Count I, 209 P.C., based on insufficient evidence."

[5]No one—neither the Attorney General, nor the State Public Defender, nor this court—has been able to discover the time limitation which defense counsel supposedly violated.

all of these matters during the course of the trial." Defense counsel agreed. He nevertheless asked for leave to present his points on the merits so that the court would have an opportunity to consider them. Leave was denied and the court proceeded to sentence defendant. Later the following colloquy ensued: "[DEFENSE COUNSEL]: Would the court consider allowing the motion for new trial to be a part of the record? I understand that the motion is denied, so—THE CLERK: I understood it was dismissed, Your Honor. THE COURT: Well, it is part of the record, however. THE CLERK: But I mean you said denied, but I want to be sure in my minutes. THE COURT: I dismissed it. THE CLERK: Because not timely filed. I just wanted to be sure that my minutes were correct. All right."

As far as the merits of the issues raised in defendant's motion for a new trial are concerned, we review each in capsule form.

1. *The jury panel*: although we appear to have a complete record of trial proceedings, we cannot find any indication that defendant objected to the method by which the jury panel was formed. In any event, the mere fact that the panel from which the jury that tried defendant was selected contained no blacks, would not establish systematic discrimination. (*People* v. *Robinson* (1964) 61 Cal.2d 373, 388 [38 Cal.Rptr. 890, 392 P.2d 970].)

2. *The victim's preliminary hearing testimony*: the record shows, without contradiction, that several weeks before the trial the victim, Michael Cleary, dropped out of sight and that the district attorney's office engaged in extensive but fruitless efforts to locate him not only in California, but also in several other states. Unquestionably the court's finding that the prosecution had exercised due diligence and that Cleary was "unavailable as a witness" was justified, if not compelled.

3. *The sunglasses and the medallion*: the point that these, allegedly found in defendant's mother's home, were improperly admitted rests on several misconceptions:[6] there is no indication that a medallion was seized or offered in evidence, the home in question was not defendant's mother's but his uncle's and the uncontradicted evidence showed that the search was by consent.

---

[6]We emphasize that—except for the last issue relating to section 209 of the Penal Code—present counsel for defendant does not claim error in connection with any of the issues raised on the motion for new trial.

4. *Defendant's statement*: after his arrest and being advised of his *Miranda* rights, defendant agreed to talk without an attorney. He denied knowledge of the crimes for which he had been arrested and agreed to take a polygraph examination. Two days later, in the presence of the polygraph examiner, defendant was again advised of his rights. Defendant again agreed to proceed with the polygraph examination but, just before being "hooked up to the machines," changed his mind and said that he did not wish to take a polygraph examination. He did not, however, indicate that he was unwilling to talk without being wired for truth. In the ensuing conversation defendant eventually admitted his involvement with Mitchell.

5. Defendant's last two points attacking the conviction under Penal Code section 209 clearly raise the argument already discussed and rejected—whether the evidence justified a finding that the victim was kidnaped for the purpose of robbery.

These then are the facts we have to work with: 1. The trial court dismissed a timely motion for new trial on the mistaken ground that it was made too late; 2. In the course of discussion the court indicated clearly that were it to rule on the merits, it would deny the motion.[7] 3. The motion has no legal merit.[8]

The question is whether, under such circumstances, section 1202 compels us to hold that defendant is entitled to a new trial without any showing that he has been prejudiced. Precedent and common sense compel a negative answer.

Section 1202 of the Penal Code actually commands the granting of a new trial for two distinct trial court derelictions: first, if judgment is not pronounced within the time provisions of section 1191 and, second, if the court neglects to rule on a motion for a new trial. (See fn. 3, *ante*.)

As far as the first of these commands is concerned, it has long been the law that it is subject to the redeeming grace of article VI, section 13 (formerly § 4-1/2) of the Constitution. (*People* v. *Ford* (1966) 65

---

[7]"I have read this motion. There isn't anything new in it. I have made rulings on all of these matters during the course of the trial."

[8]We are not holding that it would have been error for the trial court to grant the motion on an issue of fact. Theoretically, at least, it is possible that the court might have come to doubt the veracity of one or more prosecution witnesses essential to one of its rulings—such as the investigator who fruitlessly tried to find the victim Cleary.

Cal.2d 41, 47 [52 Cal.Rptr. 228, 416 P.2d 132]; *People* v. *Williams* (1944) 24 Cal.2d 848, 850 [151 Cal.Rptr. 244]; *People* v. *Zuvela* (1923) 191 Cal. 223, 224 [215 P. 907].) Thus, tardy pronouncement of judgment is reversible error only if the defendant can show prejudice. As Mr. Witkin laconically observes: "[T]his can rarely happen." (Witkin, Cal. Criminal Procedure, § 610.)

Theoretically we can think of no reason why the second command should not also be subject to article VI, section 13. There is, of course, a potentially far more difficult problem of determining whether a trial court's failure to rule on a motion for a new trial has resulted in prejudice—particularly in cases in which, for one reason or another, it is impossible to remand the case back to the trial court for determination by the judge who presided at the trial.[9] Obviously there can be no litmus test for the determination of prejudice, but each case must be judged on its own merits.

Some cases, of course, practically decide themselves. That, for example, was the situation in the *Rothrock* litigation. (*In re Rothrock* (1939) 14 Cal.2d 34 [92 P.2d 634]; *People* v. *Rothrock* (1936) 8 Cal.2d 21 [63 P.2d 807].) There, to make a long story short, the defendant made a motion for a new trial. The trial court stated that it was its "purpose to grant the motion for a new trial," but it never did and, instead, sustained a so-called objection to the verdict and vacated the proceedings. That ruling was reversed in *People* v. *Rothrock, supra*, in which opinion the court mistakenly assumed that no motion for a new trial had ever been made. That error was corrected in *In re Rothrock, supra*, where, after recalling the remittitur because of that mistaken assumption, the court remanded the matter to the trial court for a new trial, "petitioner having been prejudiced by the failure to have the motion determined, . . ." (*Id.*, p. 41.) The reason for the finding of prejudice and insistence on literal compliance with the mandate of section 1202 was plain: the trial court's failure to rule on the motion after it had announced its intention to grant it. Prejudice was demonstrable.

If *Rothrock* is an easy case at one end of the spectrum ours—at the other extreme—is no more difficult. We have already pointed out that legally the motion had no merit and that in view of the trial court's remarks it was not in the cards that it would have granted the motion on

---

[9]That is the case here. The trial judge has retired from the bench.

a factual issue. Under these circumstances, no reversible error is shown and we are constitutionally compelled to affirm.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 23, 1981. Kaus, J., did not participate therein. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.